LENARD CHAUNCY DIXON
REG. NO. 07688-031
USP VICTORVILLE
U.S. PENITENTIARY
P.O. BOX 3900
ADELANTO, CA 92301
Appearing *Pro Se*



UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LENARD CHAUNCY DIXON,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN, USP Victorville,<br><br>Respondent. | LA CV 23- 04009-ODW(PVC)<br>Case No: 5:23-cv-_____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

COMES Petitioner, LENARD CHAUNCY DIXON ("Dixon"), appearing *pro se*, and in support of this memorandum would show as follows:

## I. JURISDICTION

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 2241, which confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement

Petitioner is being held in custody, by Respondent, in violation of 18 U.S.C. § 3585(a) and the U.S. Constitution. "Congress has granted federal district courts, within their respective jurisdictions, the authority to hear applications for habeas corpus by

any person who claims to be held in custody in violation of the Constitution, or laws, or treaties of the United States", *Rasul v. Bush,* 159 L. Ed. 2d 548 (2004).

## II. STATEMENT OF THE GROUND FOR RELIEF

Whether, in light of *Wooden v. United States*, 142 S. Ct. 1063 (2022), although Dixon's Hobbs Act Robberies took place sequentially can happen on a single occasion even if not at the same time, hence, they must be counted as single occasion.

## III. STATEMENT OF THE CASE

### A. Procedural Background

On July 15, 2009, a grand jury sitting in the United States District Court for the District of Kansas, Topeka Division returned a Superseding Indictment charging Dixon. See Doc. 88.[1] Counts 1s, 4s, 7s, 8s, 11s charged Dixon with Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2. *Id.* Counts 2s, 3s, 5s, 6s, 9s, 10s, 12s, 13s, and 14s charged Dixon with Possession of A Firearm in Furtherance of A Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 922(g), and 924(e). *Id.*

On July 16, 2009, a Change of Plea Hearing was held and Dixon pleaded guilty to Counts 1s, 4s, 7s, 8s, 11s and 14s of the Superseding Indictment. See Doc. 99.

On December 14, 2009, Dixon was sentenced to 420 months' imprisonment, 5 years of Supervised Release, $1,537.83 Restitution, and a $600 Mandatory Special Assessment Fee. See Doc. 121.

On December 29, 2009, Dixon filed a Notice of Appeal. See Doc. 125.

On May 24, 2010, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") dismissed his appeal. See Doc. 135.

On August 29, 2011, Dixon filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (§ 2255 Motion"). See Doc. 136.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Eastern District of Tennessee, Southern Division in Criminal No. 5:07-cr-40124-JAR-1, which is immediately followed by the Docket Entry Number.

On March 5, 2012, the Court issued a Memorandum and Order denying Dixon's § 2255 Motion. See Doc. 142.

On May 29, 2012, Dixon filed a Motion for Reconsideration of the denial of his § 2255 Motion. See Doc. 145.

On June 28, 2012, the Court issued a Memorandum and Order denying Dixon's Motion for Reconsideration. See Doc. 146.

On July 26, 2012, Dixon filed a Notice of Appeal. See Doc. 147.

On November 14, 2012, the Tenth Circuit denied Dixon's certificate of appealability and dismissed his appeal. See Doc. 155.

On June 26, 2013, Dixon filed a Petition for a Writ of Certiorari to the Supreme Court of the United States. See Doc. 156.

On October 8, 2013, the Supreme Court of the United States denied Dixon's Petition for a Writ of Ceritorari. See Doc. 157.

On October 31, 2014, Dixon filed a Motion under FRCP 60(B) and FRcrP 52(B). See Doc. 161.

On May 9, 2016, the Court issued a Memorandum and Order denying Dixon's Motion under FRCP 60(B) and FRcrP 52(B). See Doc. 162.

On March 23, 2021, Dixon filed a Pro Se Motion to Reduce Sentence. See Doc. 174.

On July 23, 2021, the Court issued a Memorandum and Order denying Dixon's Motion to Reduce Sentence. See Doc. 175.

On August 16, 2021, Dixon filed a Notice of Appeal. See Doc. 176.

On October 20, 2021, the Tenth Circuit issued an Order denying Dixon's certificate of appealability.

**B.   Statement of the Facts**

    1.   Offense Conduct

The following facts were stipulated to by Dixon in his Plea Agreement:

On August 5, 2007, Dixon, armed with a firearm, robbed the Dollar General store at 2042 N.W. Topeka Boulevard in Topeka, Kansas. On August 6, 2007, Dixon,

armed with a firearm, robbed Tommy Meier Liquor and Wines at 2121 S.W. Wanamaker in Topeka, Kansas.

On August 13, 2007, Dixon, armed with a firearm, again robbed Tommy Meier Liquor and Wines in Topeka, Kansas.

On August 22, 2007, Dixon, armed with a firearm, robbed Wood Oil at 545 S.E. Croco Road in Topeka, Kansas.

On August 24, 2007, Dixon, armed with a firearnl, robbed Gonzalez Liquor at 225 N.W. Gordon in Topeka, Kansas. At that time, Dixon was in possession of a CZ, Model 27, 7.65 mm pistol, bearing serial number 311259, which had been shipped and transported in interstate and/or foreign commerce. See Doc. 98.

### 2. Plea Proceeding

On July 16, 2009, a Change of Plea Hearing was held before District Judge Julie A. Robinson. See Doc. 96. Dixon pleaded guilty to Counts 1s, 4s, 7s, 8s, 11s and 14s of the Superseding Indictment. See Doc. 99. In exchange of his guilty plea, Dixon received 2-level reduction for his acceptance of responsibility, pursuant to § 3E1.1(a) and the Court dismissed the remaining counts in the Superseding Indictment. *Id.*

### 3. Sentencing Proceeding

On December 14, 2009, a Sentencing Hearing was held before District Judge Julie A. Robinson. See Doc. 121. The Court sentenced Dixon to a total term of 420 months' imprisonment: 84 months' imprisonment as to Counts 1s, 4s, 7s, 8s, and 11s of the Superseding Indictment, to be served consecutive to each other; 120 months as to Count 14s, to be served concurrent with term imposed in Counts 1s, 4s, 7s, 8s, and 11s; followed by 5 years' Supervised Release as to Counts 1s, 4s, 7s, 8s, 11s, and 14s, to run concurrently. *Id.* The Court also ordered a payment of $1,537.83 Restitution and a $600 Mandatory Special Assessment Fee. *Id.* A Notice of Appeal was filed on December 29, 2009. See Doc. 125.

4.  Appellate Proceedings

On appeal, Dixon seeks to appeal his sentence as too long. See Doc. 135. "A defendant may not appeal [his] sentence if [he] has waived [his] appellate rights in an enforceable plea agreement." *United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007).

"This Court employs a three-pronged analysis to determine whether to enforce a waiver of appellate rights." *Id.* We examine "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325.

Dixon contends that the appeal waiver is outside the scope of the appeal waiver because the sentence was above the guideline range, claiming erroneously that the plea agreement permits him to appeal a sentence that is outside the guideline range. Dixon asserts that the Plea Agreement states: "By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the *guideline* range determined appropriate by the Court." Resp. at 2. (emphasis added). Dixon, however, has added the word "guideline," which is not in the actual sentence. In the Plea Agreement, the cited sentence states: "By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the range determined appropriate by the court." Plea Agreement at 10. This is consistent with the totality of the Plea Agreement, in which the parties agreed to a proposed sentencing range of 10 to 110 years. Indeed, the Plea Agreement specifically states that pursuant to Rule 11(c)(1)(C), "the parties are not requesting imposition of an advisory guideline sentence." Plea Agreement at 8.

Based on the parties' proposed sentencing range in the Plea Agreement, and all of the factors in 18 U.S.C. § 3553, the district court did impose a sentence above the advisory guideline range. The sentence it imposed was within the range proposed by

the Plea Agreement and within the range determined appropriate by the court. Thus, defendant's appeal falls within the scope of the Plea Agreement's appeal waiver.

Dixon summarily argues that, if this court determines his appeal is within the scope of the appeal waiver, then the waiver was not knowingly or voluntarily entered and to enforce it would be a miscarriage of justice. Resp. at 5. He does not articulate any basis for these arguments; nor do the Ninth Circuit find any.

Accordingly, the Ninth Circuit granted the government's motion to enforce the appeal waiver in the plea agreement and dismissed Dixon's appeal. *Id.*

### 5. Postconviction Proceedings

On August 29, 2011, Dixon filed a § 2255 Motion. See Doc. 136. In his § 2255 Motion, Dixon seeks relief on the grounds that (1) his counsel denied him effective assistance because she did not advise him that the Court could depart from the sentencing guidelines and she failed to disclose an oral agreement between the parties and (2) the prosecutor committed prosecutorial misconduct by arguing for an upward departure at sentencing. The Government responded and filed a Motion to Dismiss Dixon's § 2255 Motion. See Docs. 139, 140. In its motion, the Government argues that the Court lacks jurisdiction because Dixon's motion was untimely. Subsequently, the Court denied his motion. See Doc. 142.

## IV. COGNIZABLE CLAIMS IN A PETITION FOR A WRIT OF HABEAS CORPUS UNDER § 2241

As a general rule, "a motion under 28 U.S.C. § 2255 is the exclusive means by which a federal prisoner may test the legality of his detention[.]" *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006). An exception to the general rule, termed the § 2255(e) "escape hatch," permits a federal prisoner to "file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'" *Hernandez v. Campbell*, 204 F.3d 861, 864–65 (9th Cir. 2000) (per curiam) (quoting § 2255(e)). We have held that a remedy under § 2255 is inadequate where "the prisoner '(1) makes a

claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim.'" Marrero, 682 F.3d at 1192 (quoting *Stephens*, 464 F.3d at 898).

A. Actual Innocence

Dixon contends under *Wooden* that there are not three (3) predicate convictions used as predicate crimes for his ACCA status, and that he is therefore actually innocent of being an ACCA offender. That is, he contends, he has a claim of actual innocence cognizable under § 2241.

In addressing claims of actual innocence under § 2241, the Ninth Circuit has relied on "the standard articulated by the Supreme Court in *Bousley v. United States*, 523 U.S. 614 (1998)." *Stephens*, 464 F.3d at 899. A "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. At issue in *Bousley* was a claim of actual innocence of the crime of conviction for which a petitioner has been sentenced.

If Dixon is actually innocent because there are not three predicate prior convictions, he is actually innocent of his ACCA status and *Bousley* applies. In that event, Dixon has a claim of actual innocence cognizable under § 2241.

In this case, Dixon claims that he is actually innocent of being an ACCA offender and he is therefore actually innocent of the sentence that was imposed

## V. DISCUSSION

As a preliminary matter, Dixon respectfully requests that this Court be mindful that *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 611 F.3d 1202 (9th Cir., 2010); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

**In Light of *Wooden v. United States*, 142 S. Ct. 1063 (2022), Although Dixon's Hobbs Act Robberies Took Place Sequentially Can Happen on a Single Occasion Even If Not at the Same Time, Hence, They must Be Counted as Single Occasion.**

In *Wooden*, the Court now says that the crimes taking place sequentially can sometimes happen on a single occasion. But when it comes to location, one could view Wooden's crimes as having taken place in one or several, and the court chooses the more lenient option, when it comes to timing, one could view his crimes as transpiring in a single episode or as having many potential breaks in action, and again the court chooses the more forgiving course. The origin of the "occasion clause" confirms that multiple crimes may occur on one occasion even if not at the same time.

In support of his contention, Dixon is reproducing the entire syllabus (introduction) directly from the *Wooden* decision below.

> A jury convicted William Dale Wooden of being a felon in possession of a firearm in violation of 18 U. S. C. Sec. 922(g). The Government asked the District Court to sentence Wooden under the Armed Career Criminal Act (ACCA). ACCA mandates a 15-year minimum penalty for Sec. 922(g)offenders with at least three prior convictions for specified felonies "committed on occasions different from one another." Sect. 924(e)(1). Wooden's relevant criminal record included ten burglary convictions arising out of a single criminal episode in 1997, during which Wooden had unlawfully entered a one-building storage facility and stolen items from ten different storage units. Prosecutors indicted Wooden on ten counts of burglary—one for each storage unit—and Wooden pleaded guilty to all counts. Years later, at Wooden's sentencing hearing on his Sec. 922(g) conviction, the District Court applied ACCA's penalty enhancement in accordance with the Government's view that Wooden had commenced a new "occasion" of criminal activity each time he left one storage unit and entered another. The resulting sentence was almost sixteen years, much higher than the statutory maximum for Wooden's crime absent such an enhancement. The Sixth Circuit affirmed, reasoning that ACCA's occasions clause is satisfied whenever crimes take place at different moments in time—that is, sequentially rather than simultaneously.
>
> HELD: Wooden's ten burglary offenses arising from a single criminal episode did not occur on different "occasions" and thus count as only one prior conviction for purposes of ACCA. Pp. 4–15.

(a) Wooden's successive burglaries occurred on one "occasion" under a natural construction of that term. An ordinary person using language in its normal way would describe Wooden's entries into the storage units as happening on a single occasion, rather than on ten "occasions different from one another." Sec. 924(e)(1). The Government's contention that an "occasion" ends at the discrete moment when an offense's elements are established contravenes the ordinary usage of the word. An occasion may itself encompass multiple, temporally distinct activities. For example, the occasion of a wedding may include a ceremony, cocktail hour, dinner, and dancing. Those activities need not— and often do not—occur simultaneously; yet they nevertheless compose one occasion. The same is true for sequential criminal offenses. Indeed, the Court has often used the word "occasion" to encompass multiple, temporally discrete offenses. See, e.g., *United States v. Bryant*, 579 U. S. 140, 151. The Government's contrary view—that each sequential offense forms its own "occasion"—can make someone a career offender in the space of a minute. But that view goes far toward collapsing ACCA's two separate statutory conditions for imposing an enhanced penalty on a Sec. 922(g) offender. ACCA's enhancement kicks in only if (1) the offender has three previous convictions for specified felonies; and (2) those predicate felonies were committed on "occasions different from one another." Sec. 924(e)(1). The Government's approach would largely collapse the two conditions and give ACCA's three-occasions requirement no work to do. Pp. 5–7.

(b) Given what "occasion" ordinarily means, whether criminal activities occurred on one occasion or different occasions requires a multi-factored inquiry that may depend on a range of circumstances, including timing, location, and the character and relationship of the offenses. For the most part, the determination will be straightforward and intuitive. In many cases, a single factor—especially of time or place—can decisively differentiate occasions. In hard cases, the inquiry may involve keeping an eye on ACCA's history and purpose. Here, every relevant consideration shows that Wooden burglarized ten storage units on a single occasion. Indeed it was because the burglaries "ar[ose] from the same conduct" that Georgia law required the prosecutor to charge all ten in a single indictment. Ga. Code Ann. 16–1–7(b). Pp. 8–9.

(c) Statutory history and purpose as the Court's conclusion that Wooden is not a career offender. Congress added the occasions clause only after

a court applied ACCA's enhancement to Samuel Petty—an offender who, much like Wooden, was convicted of multiple counts of robbery for one night in one restaurant. See *United States v. Petty*, 798 F.2d 1157. Petty sought review in this Court, and the Solicitor General confessed error, stating that ACCA should not be construed to reach multiple felony convictions arising out of a single criminal episode. Shortly thereafter, Congress amended ACCA to require that the requisite offenses occur on "occasions different from one another." Minor and Technical Criminal Law Amendments Act of 1988, Sec. 7056, 102Stat. 4402. That statutory change, rejecting the original outcome in Petty in light of the Solicitor General's confession of error, is at odds with the Government's current view of the occasions clause. The Government attempts to distinguish the facts of Petty, but nothing about the Solicitor General's confession of error, or Congress's amendment of ACCA, suggests any concern for whether an offender's crimes were committed simultaneously or sequentially. Instead, each was based on another idea—that a person who has robbed a restaurant, and done nothing else, is not a career offender. The history of the occasions clause thus aligns with what this Court has always recognized as ACCA's purpose: to address the "special danger" posed by the eponymous "armed career criminal." *Begay v. United States*, 553 U. S. 137, 146. Wooden's burglary of a single storage facility does not suggest that kind of danger, any more than Petty's robbery of a single restaurant did. Pp. 10–14.

945 F. 3d 498, reversed.

Dixon's argument, to be sure, does not render the "occasion clause" wholly superfluous; in select circumstances. A criminal may satisfy the elements of multiple offenses in a single instance. The inquiry that requirement entails, given what "occasions" ordinary means, is more multi-factored in nature. They share a common scheme or purpose – the more apt they are to compose one occasion.

In light of *Wooden*, Dixon's Hobbs Act robberies can no longer stand as separate convictions due to the fact that his multiple robberies were not separated by an intervening arrest. In fact, a Warrant for Arrest was returned executed on July 15, 2009 for the Counts 1s, 4s, 7s, 8s, and 11s of the Superseding Indictment. See Doc.

10

99. Thus, making his robberies convictions a single predicate episode since the arrest was made on the same day, imposing the same sentence, and sentenced on the same date. See Doc. 121.

In the instant case, the inquiry just as readily show to single occasion, because all the factors cut that way. Here, every relevant consideration alleges that Dixon committed multiple robberies on different occasions as per his Superseding Indictment, however, it was not proven beyond reasonable doubt before a jury that Dixon committed the offenses on the said dates. Again, in this case, the PSR recited a short summary of Dixon's convictions, however, the Court failed to confirm with Dixon if he affirms or denies the accuracy of the "factual statements."

The multiple burglaries and theft of the same scheme, actuated by the same motive, and accomplished by the same means as in burglaries in *Wooden v. United States*, 595 U.S ___ (No. 20 – 5279) (S.Ct. March 7, 2022).

The First Circuit ordered similar remands in at least two prior decisions. See *United States v. Ahrendt*, 560 F.3d 69 (1st Cir. 2009); *United States v. Godin*, 522 F.3d 133 (1st Cir. 2008). Godin and Ahrendt involved challenges to the district court's refusal to "group" certain prior offenses for purposes of calculating the Guideline Sentencing Range ("GSR"). When the defendants had been sentenced, the applicable guideline provided that prior offenses were to be counted separately unless they "(A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." *Ahrendt*, 560 F.3d at 78 (quoting U.S.S.G. §4A1.2(a)(2) cmt. n.3 (2004)). In both cases, the First Circuit concluded that the district court had correctly applied that guideline provision. While the appeals were pending, however, the Sentencing Commission adopted a non-retroactive amendment under which prior offenses were to be counted as one if "the sentences were imposed on the same day." *Id.* at 79 (quoting USSG §4A1.2(a)(2)) (emphasis omitted). In both *Godin* and *Ahrendt*, the defendants' prior offenses would have been

11

grouped together under this amended provision. We recognized that, because the amendment was non-retroactive, "neither defendant was entitled . . . to a remand because neither could show that an error occurred at sentencing." *Id.* at 80. Notwithstanding the lack of error, we deemed it prudent to remand, *id.*, to allow the sentencing judge the opportunity "to consider the Commission's current thinking," as reflected in the amendment, *Godin*, 522 F.3d at 136. In a more recent case, *United States v. Rodriguez-Rosado* (1st Cir. 2017), which was decided on April 19, 2017, the First Circuit granted the same judgment - vacated the district court's orders denying Rodriguez-Rosado motion to reduce sentence and remand for further proceedings. Such a remand will allow the court to benefit from the wealth of experience that it has gained adjudicating motions to reduce sentences pursuant to AD 14-426. This process was brand-new when the court ruled on Rodriguez-Rosado's motion. Remand will also foster confidence in the judicial system by ensuring that Rodriguez-Rosado's motion is handled similarly to those of his ten co-defendants who were potentially eligible for a sentence reduction. The question of whether to grant a sentence reduction "is a matter [Congress] committed to the sentencing court's sound discretion." *United States v. Zayas-Ortiz*, 808 F.3d 520, 523 (1st Cir. 2015) (alteration in original) (citation omitted).

In this case, Dixon has been charged with Hobbs Act Robbery on Counts 1s, 4s, 7s, 8s, and 11s. Then, he pleaded guilty on all mentioned counts and was sentenced to a total term of 420 months' imprisonment, concurrent to his 120-month sentence on 924(c) conviction (Count 14s). Based on 18 U.S.C. § 1951(a), "Hobbs Act robbery are punishable by the same maximum term of imprisonment of not more than 20 years as for a substantive Hobbs Act robbery,"however, the Court sentenced Dixon to a total term of 420-month sentence (84 months on each Counts 1s, 4s, 7s, 8s, and 11s, to run consecutively).

Thus, in light of *Wooden*, it was stated in the Superseding Indictment that Dixon

12

has committed the same robbery offense and with the same motive, making his robbery convictions a single predicate offense as in *Wooden*. Therefore, the Court should resentence Dixon to 84 months' imprisonment on Counts 1s, 4s, 7s, 8s, and 11s (Hobbs Act robbery group) and 120 months as to Count 14s to run concurrently, for a total term of 120 months' imprisonment.

Finally, Dixon asserts that the judgment based on a null and void conviction and/or erroneous Hobbs Act sentencing, resulted in a 420-month sentence. If so, this could be deemed a miscarriage of justice because it affected his substantial rights.

## V. CONCLUSION

For the above and foregoing reasons, Dixon's sentence must be vacated for resentencing in light of *Wooden*. In the alternative, an evidentiary hearing should be held so that Dixon may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: May 16, 2023.

LENARD CHAUNCY DIXON
REG. NO. 07688-031
USP VICTORVILLE
U.S. PENITENTIARY
P.O. BOX 3900
ADELANTO, CA 92301
Appearing *Pro Se*

13

Renard Dixon 01688-031
U.S.P-Victorville
U.S. Penitentiary
P.O. Box 3900
Adelanto, CA 92301

RECEIVED
CLERK, U.S. DISTRICT COURT
MAY 23 2023
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

Mr. Kiry K. Gray
Clerk of Court
U.S. District Court
Central District of California
Eastern Division
3470 Twelfth Street
Riverside, CA 92501-3801